UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

COVENANT MEDICAL           )
MANAGEMENT, INC.,         )
                                   )
        Plaintiff,          )
                                   )
v.                             )     No.:    3:06-CV-185
                                 )            (VARLAN/SHIRLEY)
SUZANNE KNEPPER OSS, M.D.,   )
                                 )
        Defendant.     )

**<u>MEMORANDUM OPINION</u>**

This civil action is before the Court on cross motions for summary judgment. In plaintiff's Motion for Summary Judgment [Doc. 3], plaintiff seeks judgment against defendant in the amount of $164,086.66, plus costs and attorneys' fees, on the grounds that there are no disputed issues of material fact as to defendant's breach of contract and plaintiff is entitled to judgment as a matter of law. In her Motion for Summary Judgment [Doc. 7], defendant argues that plaintiff breached the contract at issue by rejecting her tender of performance, that her performance under the contract was excused on the basis of frustration of purpose and impossibility, and that the liquidated damages clause of the contract is an unenforceable penalty and that accordingly, she is entitled to judgment as a matter of law.

The Court has carefully considered the pending motions, supporting briefs [Docs. 4, 8] and response and reply memorandums [Docs. 6, 9, 10, 13] in light of the applicable law. For the reasons set forth herein, plaintiff's motion for summary judgment [Doc. 3] will be

granted in part and denied in part and defendant's motion for summary judgment [Doc. 7] will be granted in part and denied in part.

I.      **Relevant Facts**

On January 11, 1996, defendant, Dr. Susan Knepper Oss, entered into an agreement with the University of Tennessee (the "College") and the Fort Sanders Health System (the "Hospital") whereby the Hospital agreed to pay Dr. Oss $20,000 for each of four academic years, conditioned upon her fulfillment of various obligations as set forth in the Clinical Scholars Conditional Award Agreement signed by Dr. Oss. The record contains a complete copy of the Clinical Scholars Conditional Award Agreement at issue [Doc. 1, Ex. 1 (hereinafter "Agreement")]. One of the obligations imposed by the Agreement requires that the recipient of the award repay the loan made by the College by "practicing general medicine on a full-time basis (forty hours per week) in a Fort Sanders Health System County of the State of Tennessee, with repayment commencing immediately following the completion a residency program... ." [Agreement at ¶ V]. This was in keeping with one of the stated purposes of the Agreement, which was "to provide heal services in numerous underserved Tennessee Counties, hereinafter referred to as Fort Sanders Health System Counties." [*Id.* at 1.] The Agreement also provides that breach of it occurs when a recipient of the award either fails to begin or fails to complete his or her service obligation under the Agreement. [*Id.* at ¶ VII.] In that instance, the Agreement provides the following:

Applicant shall be immediately liable to the College for two (2) times the total uncredited amount of all conditional award payments paid hereunder, the uncredited sums to be prorated on a monthly basis for a maximum of 48 months, respecting the Applicant's actual service and total service obligation, provided that the College and Hospital may, for reasons deemed compelling, agree to a lesser measure of damages for the Applicant's breach of Applicant's service obligation.

*Id.*

Per the terms of the Agreement, the College made payments to Dr. Oss totaling $82,043.33 while she attended medical school. Upon completing her residency in pediatrics, Dr. Oss engaged in an extensive job search in the Knoxville, Tennessee area. However, she was unable to find a job opening for a pediatrician in the Fort Sanders Health System. Dr. Oss thereupon moved to Sheridan, Wyoming, where she secured a position as a pediatrician.

Plaintiff, Covenant Medical Management, Inc., is the College's assignor under the Agreement and filed suit in Knox County Chancery Court on April 5, 2006, seeking judgment against Dr. Oss in the amount of $164, 086.66 for Dr. Oss's alleged breach of the Agreement. Dr. Oss removed the case to this Court on the basis of diversity of citizenship jurisdiction on May 19, 2006.

## II.     Motions for Summary Judgment

### A.     Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

B.    Analysis

The Agreement stipulates and the parties agree that the contract must be construed according to Tennessee law. [Agreement at ¶ IX]. Under Tennessee law, questions of contract interpretation are issues of law, *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46

S.W.3d 191, 196 (Tenn. 2001), and when the facts are not in dispute, the issues can be resolved on summary judgment. *See Standard Fire Ins. Co. v. Chester O'Donley & Assoc., Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998). "The central tenant of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d (Tenn. 2002). Courts must interpret a contract as written, "rather than according to the unexpressed intention of one of the parties." *Sutton v. First Nat. Bank of Crossville*, 620 S.W.2d 526, 520 (Tenn. Ct. App. 1981). Furthermore, courts are not to make contracts for parties, but can only enforce the contract which the parties have made. *McKee v. Continental Ins. Co.*, 234 S.W.2d 830, 831 (Tenn. 1951). If a contract is plain and unambiguous, the meaning of that contract is a question of law and it is therefore the court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955); *Guiliano v. CLEO, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). A court must avoid rewriting an agreement under the guise of interpreting it, *Marshall v. Jackson & Jones Oils, Inc.*, 20 S.W.3d 678, 682 (Tenn. Ct. App. 1998), and cannot relieve parties of their contractual obligations simply because these obligations later prove to be burdensome. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002).

Dr. Oss presents three arguments as to why she is not required to repay the student loan issued to her for her medical education. First, Dr. Oss argues that she tendered performance by seeking employment within the Fort Sanders Health System, but that Covenant rejected that tender by not hiring her, thereby breaching the contract itself.

Second, Dr. Oss argues that the purpose of the Agreement was frustrated and performance of it was made impossible because by the time she was seeking employment, the Fort Sanders Counties were no longer "underserved," as evidenced by Dr. Oss's claimed inability to find an opening for a pediatrician in the area. Accordingly, Dr. Oss contends that her performance of the contract was excused. Third, Dr. Oss argues that the liquidated damages clause of paragraph VII of the Agreement, which provides for a doubling of amounts owed in the event of breach of the Agreement, is a penalty and is therefore unenforceable under Tennessee law.

Covenant argues that Dr. Oss breached the Agreement by failing to begin or complete her service obligation to practice general medicine in the Fort Sanders County Health System County and that she is accordingly liable to Covenant for twice the uncredited amount of the payments made to her, as provided for under paragraph VII of the Agreement. The Court will address each of these arguments in turn.

### 1. Tendering Performance

Dr. Oss argues that she "tendered performance immediately upon completing residency" and that because her tender was rejected by Covenant's failure to hire her, Covenant breached the Agreement and/or rendered it unenforceable. [Doc. 8 at 4.] Covenant argues that Dr. Oss did not tender performance under the Agreement simply by asking Covenant for a job and contends that "Dr. Oss only could have 'tendered performance' by either finding or performing a job pursuant to the Service Obligation or by repaying the money she was advanced pursuant to the Repayment Obligation." [Doc. 10 at 8.] Covenant

6

further argues that even if Dr. Oss had successfully tendered performance, Covenant did not

reject such tender by not giving her a job because "the Agreement did not anticipate, much

less require, that Covenant would employ Dr. Oss." [*Id.*] .

A tender is an offer to perform a contract with the present ability to do so. C.J.S.

*Contracts* § 548 (2006). It indicates a readiness and willingness by one party to perform his

or her obligation under a contract. 17A AM. JUR. 2d *Contracts* § 599 (2006); *Reagan v.*

*Reagan*, 1997 WL 421006 at *2 (Tenn. Ct. App. 1997) ("[t]ender...means the plaintiff has

shown a willingness and ability to perform, and to do all the things that he is required to do

by the contract... ."). What is essential to successful tender "is that it shall appear to the court

and shall have been made clear to the other party to the contract that the agreed upon

exchange would be carried out immediately if the other party performs." 15 WILLISTON ON

CONTRACTS § 47:5 (4th ed.).

Upon careful examination of the Agreement, the Court notes that the Agreement does

not require that Covenant employ Dr. Oss. Instead, it provides that the for each year the

applicant practices "on a full-time basis in a Fort Sanders Health System County,...the

Applicant shall receive credit...in the amount of the conditional award received during any

one year in medical school." [Agreement at ¶ V.] In other words, it provides for forgiveness

of the loan made to a recipient only if that recipient practices general medicine in the Fort

Sanders Health System for the required period of time. The Agreement further stipulates that

"if, after completing residency training, Applicant breaches the agreement by either failing

to begin or failing to complete Applicant's service obligation hereunder, Applicant shall be

immediately liable to the College for two (2) times the total uncredited amount for all conditional award payments paid hereunder...." [*Id.* at ¶ VII.] Thus, Covenant was not required by the Agreement to employ or forfeit repayment of the award upon notification of Dr. Oss's ultimately unsuccessful job search. Instead, the Agreement makes it clear that Covenant was entitled to seek immediate repayment of the loan given that Dr. Oss was "failing to begin" her service obligation under the Agreement. In this way, Dr. Oss's notification that she could not find a position in the Fort Sanders Health System was essentially a tender that triggered her obligation to repay the full amount of the loan. It did not, however, create the obligation that Covenant either employ Dr. Oss or forgive the loan. There is simply no such language in the Agreement.

Accordingly, the Court finds that Covenant did not breach or otherwise render the Agreement unenforceable either by failing to employ Dr. Oss or by immediately seeking repayment of the loan.

### 2. Commercial Frustration of Purpose

Dr. Oss argues that her performance under the Agreement is excused on the grounds that the purpose of the Agreement has been frustrated and is therefore impossible to perform because it was unforeseeable to any of the parties to the Agreement that "the Fort Sanders Counties would change from 'underserved' to overserved, such that there were no openings for pediatricians." [Doc. 8 at 5.] Covenant argues that Dr. Oss's inability to find employment in the Fort Sanders Health System does not result in the purpose of the Agreement being frustrated given that the purpose of the agreement was not "to provide health services to

8

counties that are underserved in any particular field of medicine." [Doc. 10 at 9.] Covenant also contends that the Agreement anticipates the kind of situation in which Dr. Oss finds herself in that it gives Covenant discretion to reduce damages owed for its breach if Covenant determines there is a compelling reason to do so. [*Id.* at 9-10.]

The doctrine of frustration of commercial purpose was first recognized and defined by the Tennessee Supreme Court in *North American Capital Corporation v. McCants*, 510 S.W. 2d 901 (Tenn. 1974), and has been subsequently articulated as occurring where "the happening of an event, not foreseen by the parties to the contract and neither caused by nor under the control of either party, has destroyed or nearly destroyed either the value of performance or the object or purpose of the contract." *Haun v. King*, 690 S.W.2d 869, 871 (Tenn. Ct. App. 1984). When this occurs, the parties to that contract are excused from further performance. *Id.*

The Sixth Circuit has recently noted that the *McCants* court's interpretation of the doctrine makes it applicable only when the supervening event in question is "wholly outside the contemplation of the parties." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 679 (6th Cir. 2003). There, the Court went on to note that "if such frustrating event was reasonably foreseeable, the doctrine is not a defense. The doctrine is predicated on the premise of giving relief where the parties could not provide themselves, by the provisions of the contract, against the happening of the supervening event." *Id.* In this way, the doctrine of frustration of commercial purposes is a doctrine of narrow applicability and has been consistently interpreted as such by Tennessee courts. It does not, for example, "apply

when the frustrating event was reasonably foreseeable by one party." *Scruggs v. Roach*, 1993 WL 93362 at *3 (Tenn. Ct. App. 1993). Furthermore, "unexpected financial difficulty, expense or hardship does not excuse a contractual promissor from performing his undertaking when the contract does not provide otherwise. *Haun*, 690 S.W. 2d at 972 (citing 84 A.L.R. 2d 12, *Contracts – Performance Impossibility*, § 23 (1962)).

While Dr. Oss vociferously argues that the fundamental purpose of the Agreement was frustrated because the Fort Sanders Health System counties were not underserved when she was seeking employment, the Court does not find the doctrine of frustration of commercial purpose applicable in this instance. First, as Covenant notes in its brief in opposition to Dr. Oss's motion for summary judgment, Dr. Oss has not definitively established that the Fort Sanders Health System counties were not underserved. [Doc. 10 at 9.] Dr. Oss contends that "[t]here can be no dispute that the area was no longer underserved in 2005," [Doc. 13 at 6], but the only support she gives for this contention is that she was unable to find an opening for a pediatrician during the several months in which she searched for a job. Absent additional evidence, simply because Dr. Oss was unfortunately unable to find a position in her chosen speciality does not mean that the entire Fort Sanders Health System was overserved by all specialities of medicine.

Furthermore, while Dr. Oss and Covenant agree that one of the stated purposes of the Agreement was "to provide health services to underserved Tennessee counties," [Doc. 10 at 8], that is arguably not the sole, or even the primary purpose of the Agreement. As the

Agreement's title, "Clinical Scholars Conditional Award Agreement," suggests, its main

purpose is to provide a conditional award of money to a recipient to enable that student to

complete his or her medical school studies. As discussed above, the Agreement does not

guarantee employment for a recipient upon completion of his or her residency. Rather, it

provides an award of $20,000 per academic year conditioned upon a recipient fulfilling

certain duties spelled out in the Agreement, one of which is "practicing general medicine on

a full-time basis...in a Fort Sanders Health System County in the State of Tennessee."[1]

[Agreement at ¶ V.] Therefore, inasmuch as the purpose of the Agreement was to provide Dr.

Oss with a conditional scholarship award, that purpose was not frustrated by her ultimate

inability to secure employment within the Fort Sanders County Health System.

Most crucial for determining the applicability of the doctrine frustration of

commercial purpose to this case, however, is that the Agreement does not fail to anticipate

situations such as this one where the recipient is unable to fulfill their obligations under the

Agreement, for whatever reason. Specifically, the Agreement contains two paragraphs

articulating the repayment obligations of the recipient in the event that the Agreement is

breached [Agreement at ¶ VII] or the recipient is dismissed for non-academic reasons [*id.* at

¶ VIII]. Additionally, paragraph VII of the Agreement provides that "the College and

Hospital may, for reasons deemed compelling, agree to a lesser measure of damages for the

---

[1]Among other conditions, the Agreement also requires that an award recipient participate in a General Medicine Preceptorship during the summer months [Agreement at ¶ III], complete residency training in no greater than four (4) years, [*id.* at ¶ II], and not accept any type of stipend, loan, scholarship or financial aid from an organization that would require the recipient work in some location other than the Fort Sanders Health System [*id.* at ¶ IV].

Applicant's breach of Applicant's service obligation." [*Id.* at ¶ VII]. By the plain language of this provision, the Agreement anticipates circumstances like the one in which Dr. Oss found herself: specifically, where a recipient is unable to practice medicine within the Fort Sanders Health System due to no arguable fault of their own. Whether Covenant should choose to exercise its discretion and reduce Dr. Oss's repayment obligation under the Agreement as provided for in this provision is not within the province of this Court. However, it is clear that a recipient's inability to secure a position within the Fort Sanders Health System was reasonably foreseeable and this is reflected by the Agreement itself. Accordingly, the defense of frustration of commercial purpose is unavailable to Dr. Oss.

### 3. Liquidated Damages Clause

Lastly, Dr. Oss argues that the amount of damages Covenant seeks from her, which is two times the amount of the award payments made to her, constitutes a penalty and is therefore unenforceable under Tennessee law. [Doc. 8 at 6.] Dr. Oss states that "[i]t is ludicrous to contend that...double damages constitute an arms length agreement as to the amount of indeterminable damages which the sponsor would suffer in the event of a breach" and that the provision is therefore punitive. [Doc. 13 at 8-9.] Covenant contends that the liquidated damages provision of the Agreement is enforceable, as it reasonably relates to the amount of actual damages caused by Oss's breach of the agreement. [Doc. 10 at 12.] Covenant goes on to state that "Covenant and Dr. Oss were in the best position to estimate

Covenant's damages upon any breach by Dr. Oss, and the Court should not disturb that express provision of the Agreement." [*Id.* at 13.]

In general, the purpose of damages in a breach of contract case is to place the injured party, as nearly as possible, in the same position it would have been in had the contract been performed. *Lamons v. Chamberlain*, 909 S.W.2d 795, 801( Tenn. Ct. App. 1993). However, contracting parties are free to include in a contract a provision for liquidated damages. When a contract contains such a provision, the Tennessee Supreme Court has made it clear that "courts should not interfere in the contract, but should carry out the intentions of the parties and the terms bargained for in the contract," even if those terms may seem undesirable or unpleasant to outside observers. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 100 (Tenn. 1999) (citing *Chapman Drug Co. v. Chapman*, 341 S.W.2d 392, 398 (Tenn. 1960)). In *Guiliano*, the court went on to state that:

> [C]ourts must focus on the intentions of the parties based upon the language in the contract and the circumstances that existed at the time of contract formation. Those circumstances include: whether the liquidated sum was a reasonable estimate of potential damages and whether actual damages were indeterminable or difficult to measure at the time the parties entered into the contract. If the provision satisfies those factors and reflects the parties' intentions to compensate in the event of a breach, then the provision will be upheld as a reasonable agreement for liquidated damages. However, if the provision and circumstances indicate that the parties intended merely to penalize for a breach of contract, then the provision is unenforceable as against public policy.

995 S.W.2d at 100-101 (internal citations removed). Ultimately, these factors highlight the competing interests a court must balance in determining whether to uphold a liquidated damages provision. "One is the freedom of parties to bargain for and agree upon terms. The

13

other is limitations set by public policy." *Eatherly Construction Co. v. HTI Memorial Hospital*, 2005 WL 2217078 at *8 (Tenn. Ct. App. 2005); *accord Anesthesia Medical Group, P.C. v. Burns*, 2006 WL 2737829 at *6 (Tenn. Ct. App. Sept. 25, 2006).

In considering these factors, the Court concludes that, under the circumstances of this case, liquidated damages provision of the Agreement is more like a penalty for breach of the Agreement than a means to compensate for damages that would otherwise be difficult to calculate. First, Covenant has presented no evidence indicating that the actual damages it has incurred due to Dr. Oss's breach exceed the award payments, including interest, made to her. Thus, there is no proof before the Court that the doubled amount of damages Covenant seeks is reasonable. Second, there is no evidence that the actual amount of damages resulting from Dr. Oss's breach could not be accurately predicted at the time the parties entered into the Agreement. To the contrary, the evidence in the record suggests that actual damages were neither indeterminable nor difficult to measure at the time of the Agreement's formation. The College agreed to advance to Dr. Oss $20,00 per academic year, including interest. Therefore, the logical and easily calculated amount owed by Dr. Oss to Covenant is the amount of money that was advanced to her, specifically $82,043.33. Without any proof on the matter from Covenant, the Court cannot in good faith determine that Dr. Oss's breach cost Covenant twice that amount or otherwise satisfies the standard set forth in *Guiliano*.

While the Court appreciates that "it is not the duty of courts of common law to relieve parties from the consequences of their own improvidence," *Guiliano*, 995 S.W. 2d at 101 (internal citations removed), Tennessee law also does not favor courts upholding liquidated

14

damages clauses where such provisions serve only to penalize a party for breaching a contract. *American Senior Development, L.L.C. v. Parkside of Collierville, L.L.C.*, 102 Fed. Appx. 890, 897 (6th Cir. 2004) (citing *Guiliano*, 995 S.W. 2d at 98). Because Covenant has failed to establish that the liquidated damages sum it seeks is a reasonable estimation of the damages it has suffered as a result of Dr. Oss's breach, the Court cannot enforce the Agreement's liquidated damages provision. *Eatherly*, 2005 WL 2217078 at *9 (citing *Guiliano*, 995 S.W. 2d at 100-101). In this instance, the provision appears to be a penalty and is therefore unenforceable under Tennessee law.


**III.    Conclusion**

Based upon the Court's interpretation of the terms of the Agreement according in their plain, reasonable meaning and in light of controlling law, the Court finds that Covenant did not breach the Agreement by refusing tender of performance by Dr. Oss and that Dr. Oss's performance under the Agreement is not excused through the defense of frustration of purpose. Dr. Oss's failure to work within the Fort Sanders Health System was a breach of the Agreement, thereby triggering the repayment provision of paragraph VII of the Agreement. However, the Court further finds that the liquidated damages clause of paragraph VII is unenforceable as a penalty. Instead, the Court finds that Dr. Oss owes Covenant $82,043.33, the amount of award payments advanced to her plus interest.

Accordingly, Covenant's motion for summary judgment [Doc. 3] is granted in part and denied in part. Dr. Oss's motion for summary judgment [Doc. 7] is granted in part and denied in part.

The Clerk is directed to enter judgment accordingly.


                                        s/ Thomas A. Varlan
                                        UNITED STATES DISTRICT JUDGE